KIRBY AISNER & CURLEY LLP
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500
Julie Cvek Curley, Esq.
Email: JCurley@kacllp.com

**HEARING DATE AND TIME:**
**November 16, 2026 at 11:00 a.m.**

**OBJECTION DEADLINE:**
**November 9, 2026**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
In re:

ISAAC C. SUTTON,
Debtor.

Chapter 11
Case No. 26-42788 (JMM)

---------------------------------------------------------------X

**DEBTOR'S MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363(b), (f) and (m) OF THE BANKRUPTCY CODE AUTHORIZING THE PRIVATE SALES OF DEBTOR'S TENANCY BY THE ENTIRETY INTERESTS ONLY IN (1) 1575 EAST 4TH STREET, BROOKLYN, NEW YORK, (2) 1576 EAST 5TH STREET, BROOKLYN, NEW YORK, AND (3) 223 CORLIES AVENUE, ALLENHURST, NEW JERSEY**

**TO: THE HONORABLE JIL MAZER-MARINO, CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Isaac C. Sutton, the above captioned debtor and debtor-in-possession (the "Debtor"), by his attorneys, Kirby Aisner & Curley, LLP, files this motion (the "Motion") seeking the entry of an order (the "Sale Order"), pursuant to sections 105 and 363(b), (f) and (m) of Title 11 of the Bankruptcy Code authorizing the private sale of the Debtor's tenancy by the entirety interest only in real property located at (1) 1575 East 4th Street, Brooklyn, New York, ("4th Street"), (2) 1576 East 5th Street, Brooklyn, New York ("5th Street"), and (3) 223 Corlies Avenue, Allenhurst, New Jersey ("223 Corlies") pursuant to the respective Contracts of Sale, free and clear of any and all claims, liens, encumbrances and other interests (except as specified). In support of the Motion, the Debtor respectfully represents and sets forth as follows:

## PRELIMINARY STATEMENT

1. The Debtor filed this case in the hope of obtaining a "fresh start" while also formulating a Chapter 11 plan to provide a recovery to creditors in the order of priority under the Bankruptcy Code. The Debtor owns three parcels of real estate – 4th Street, 5th Street, and 223 Corlies (the "Properties") – with his wife, Alisa Sutton ("Alisa") as tenants by the entirety. There are mortgages on each of the Properties with any equity in the Properties further "encumbered" by certain Judgments (defined below) entered against the Debtor, which far exceed the equity in those Properties. Although state law makes it nearly impossible for the holder of a judgment lien to force a sale of a tenancy by the entirety property, the Debtor has negotiated the sale of his tenancy by the entirety interest in the Properties which will result in an approximate $960,000.00[1] payment towards the Judgments (in order of priority) and $100,000 to be used to fund a plan of reorganization to be confirmed by the Debtor (the "Plan Fund").

2. Alisa, the Debtor's wife, holds 50% of the interest in the Properties as a tenant by the entirety and Alisa is not a judgment debtor on account of the Judgments. Under applicable law, Alisa is not required to consent to the sale of the Debtor's 50% interests to anyone. However, Alisa has provided her limited consent to these proposed sales to family members who are willing to maintain a 50% interest in the Properties with Alisa retaining her 50% interest in the Properties. As will be demonstrated, the private sales proposed, while to the Debtor's family members, are not "sweetheart" deals. Each purchase price is based upon an appraisal of the property, representing fair market value. Each party was represented by their own, separate counsel. The terms of each Contract were negotiated between counsel over the course of two (2) months. Not only has Alisa consented to the sale of the Properties, avoiding the cost and risk of litigation of a forced sale under

[1] *See* ¶40 below. This amount is net of transfer taxes of approximately $123,747.50, which would be avoided if the Debtor confirms a plan of reorganization and obtains a §1146 exemption.

section 363(h), but she has offered additional consideration and a carveout to the Debtor's estate to facilitate the sales and the Debtor's plan of reorganization to be filed. The private sales, if approved, will address all of the mortgages on the Properties ending numerous foreclosure actions, while also benefiting the parties that have Judgments against the Debtor. The sales of the Properties in accordance with the terms of the Contracts and with the consent of Alisa would yield the highest recovery possible and stop the incurrence of interest on existing mortgage on the Properties, which are all in foreclosure. If the Motion is not approved, it is unlikely that the Debtor's unsecured creditors would receive any distribution. Accordingly, the private sales proposed in this Motion are in the best interest of the Debtor's estate and all of its constituents, including the unsecured creditors, and should be approved.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the Eastern District of New York (the "Court") has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Administrative Order No. 264 titled "In the Matter of The Referral of Matters to the Bankruptcy Judges" of the United States District Court for the Eastern District of New York (Weinstein, C.J.), dated August 28, 1986, and Administrative Order No. 601 of the United States District Court for the Eastern District of New York (Amon, C.J.), dated December 5, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are Sections 105(a) and 363 (b), (f) and (m) of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 6004-1 and 6006-1 of the Local Rules of the Bankruptcy Court for the Eastern District of New York (the "Local Rules"),

and General Order 557 of the Bankruptcy Court for the Eastern District of New York (the "EDNY Sale Guidelines").

## BACKGROUND

### A. General

5. On June 5, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Case"). Thereafter, the instant proceeding was referred to your Honor for administration under the Bankruptcy Code.

6. The Debtor has continued in possession of his property and the management of his business affairs as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been heretofore appointed in this Chapter 11 Case.

7. A detailed description of the Debtor and the reasons for filing this Chapter 11 Case are set forth in the *Declaration of Isaac C. Sutton Pursuant to E.D.N.Y. Local Bankruptcy Rule 1007-4* (the "First Day Declaration") [Docket No. 8], which is incorporated herein by reference.

8. Prior to the Petition Date, the Debtor was involved in several litigations in which several judgments were entered against the Debtor, to wit, (i) $4,902,825.55 entered on May 2, 2018 in New York Supreme Court, Kings County in favor of Frieda Hamway, Rachelle Jemal, Judith Susan Paskie, Gail Maslaton, and Joan Sitt (the "Hamway Judgment"), (ii) $536,353.77 entered on December 4, 2020 in New York Supreme Court, Kings County in favor of Acheron Portfolio Trust (the "Acheron Judgment"), (iii) $79,908.15 entered on January 10, 2019 in New York Supreme Court, New York County in favor of 10839 Associates (the "10839 Judgment"), and (iv) $3,254,537.40 entered on October 17, 2022 in New York Supreme Court, New York County in favor of Estate of Leon Tawil (the "Tawil Judgment", together with the Hamway Judgment,

Acheron Judgment, and 10839 Judgment, the "Judgments"). After post-judgment interest is considered, the amount of the Judgments is much higher. Indeed, according to the proofs of claim filed by the holders of the Judgments, the current balance for all of the Judgments is $13,471,852.81.[2]

9. The Debtor has a tenancy by the entirety interest in the Properties, however, the equity in the Properties is entirely encumbered by the Judgments. The Debtor estimates that his non-exempt personal property has a de minimis value of less than $5,000.00. *See* Debtor's Schedule A/B, Docket Nos. 18 and 54. The liquidation of the Debtor's assets are unlikely to realize anything to the Debtor's estate and creditors. The Debtor's sole source of income is his monthly disability benefit payments from Unum Group in the approximate amount of $20,000 under a private disability insurance policy, which is exempt. The Debtor does not have sufficient non-exempt income to fund a repayment plan to his creditors.

10. The Debtor has developed and negotiated a sale of his tenancy by the entirety interests in the Properties that addresses all of the Mortgages on the Properties and results in a recovery to other creditors in this case, including the holders of the Judgments, while also establishing the Plan Fund.

**B. 5th Street**

11. The Debtor's primary residence is the 5th Street property, which is owned by the Debtor and his wife Alisa as tenants by the entirety. A copy of the deed for 5th Street is annexed hereto as **Exhibit A**.

12. 5th Street is valued at $3 million based upon an appraisal dated May 27, 2026, a copy

[2] *See* Proof of Claim No. 11 (Tawil Judgment - $3,167,000.00), Proof of Claim No. 12 (Acheron Judgment - $802,047.26), Proof of Claim No. 15 (Hamway Judgment - $9,368,780.92), and Schedule D, 2.1 (10839 Judgment - $134,024.63). The Debtor does not waive, and fully reserves, all of his rights to object to the proofs of claim filed in connection with the Judgments.

of which is annexed hereto as **Exhibit B.** The mortgage on 5th Street is approximately $2,482,249.49, based upon Proof of Claim No. 7 filed by US Bank. After deducting broker fees and closing costs, the equity in 5th Street is $237,750.51. Attributing 50% of the equity to the Debtor would result in the Debtor's interest totaling $118,875.26. The Debtor's homestead exemption in the amount of $204,825.00 exceeds the available equity. As such, any forced sale of 5th Street, if permitted under applicable law, would not provide any value to the estate.

13. Notwithstanding there is no equity above Debtor's homestead exemption, the Debtor has negotiated, with the consent of Alisa, the sale of his tenancy by the entirety interest only in 5th Street, subject to the existing mortgages only, to his son Meir Sutton (the "5th Street Purchaser") in the amount of $304,825.00 (the "5th Street Purchase Price") pursuant to the terms and conditions set forth in the Contract of Sale dated October 13, 2026 (the "5th Street Contract"), a copy of which is annexed hereto as **Exhibit C.**

14. After deducting the Debtor's homestead exemption from the 5th Street Purchase Price, transfer taxes and closing costs, the remaining proceeds will yield a payment of approximately $80,000.00 to the holders of the Judgments, in order of priority. In addition, from the Debtor's homestead exemption from 5th Street Purchase Price, the Debtor intends to contribute $50,000.00 to the Plan Fund.[3]

**C. 4th Street**

15. The Debtor also has an ownership interest in an adjacent property, 4th Street, which is occupied by his daughter and her family, who pay rent to the Debtor and his wife Alisa on a monthly basis. 4th Street is also owned by the Debtor and his wife Alisa as tenants by the entirety. A copy of the deed for 4th Street is annexed hereto as **Exhibit D**.

[3] The remainder of the Debtor's homestead exemption ($154,825.00) will be credited to the 5th Street Purchaser at the closing.

16. The Debtor's wife has agreed to buy Debtor's tenancy by entirety interest in 4th Street based upon 50% of the value of the equity in the property. 4th Street is valued at $1,385,000 based upon an appraisal dated May 27, 2026, a copy of which is annexed hereto as **Exhibit E.** The mortgage on 4th Street is approximately $849,624.66, based upon Proof of Claim No. 9 filed by US Bank, and is subject to a NYC Dept Finance lien in the approximate amount of $4,457.77. After deducting broker fees and closing costs, the equity in 4th Street is $396,267.57. Attributing 50% of the equity to the Debtor would result in the Debtor's interest totaling $198,133.79.

17. The Debtor has negotiated the sale of his tenancy by the entirety interest only in 4th Street to Alisa (the "4th Street Purchaser"), subject to the existing mortgages only, in the amount of $225,175.00 (the "4th Street Purchase Price") pursuant to the terms and conditions set forth in the Contract of Sale dated October 9, 2026 (the "4th Street Contract"), a copy of which is annexed hereto as **Exhibit F.**

**D. 223 Corlies**

18. The Debtor also owns a seasonal property, 223 Corlies, which is also owned by the Debtor and his wife Alisa as tenants by the entirety. A copy of the deed for 223 Corlies is annexed hereto as **Exhibit G.**

19. 223 Corlies is valued at $4 million based upon an appraisal dated June 16, 2026, a copy of which is annexed hereto as **Exhibit H.** The mortgages on 223 Corlies total approximately $2,185,588.38.[4] After deducting broker fees and closing costs, the equity in 223 Corlies is approximately $1,378,536.62. Attributing 50% of the equity to the Debtor would result in the Debtor's interest totaling $689,268.31.

20. The Debtor has negotiated the sale of his tenancy by the entirety interest only in

[4] *See,* Proof of Claim No. 5 filed by US Bank in the amount of $1,835,180.17, and Proof of Claim No. 8 filed by Computershare Delaware Trust Company in the amount of $350,408.21.

223 Corlies, free and clear of the existing mortgages and Judgments, to his daughter Norma Sutton and her husband Ovadia Harary, or an entity to be formed by them for the purpose of acquiring 223 Corlies ("Corlies Purchaser")[5] in the amount of $2,975,000.00 (the "223 Corlies Purchase Price")[6] pursuant to the terms and conditions set forth in the Contract of Sale dated October 21, 2026 (the "223 Corlies Contract"), a copy of which is annexed hereto as **Exhibit I.**

**E. Alisa Contribution**

21. In addition to Alisa consenting to the Contracts[7], in order to avoid the cost of litigation of a forced sale under section 363(h), and the risk of having all of the Properties sold without her consent, Alisa has agreed to contribute an additional $50,000.00 to the Debtor's Plan Fund (the "Alisa Contribution"), as set forth in the agreement annexed hereto as **Exhibit J**.

## RELIEF REQUESTED AND BASIS THEREOF

22. By this Motion, the Debtor seeks approval of the Contracts, and authorization to proceed with the sale of the Debtor's tenancy by entirety interests in the Properties provided for thereunder, free and clear of all liens, claims and encumbrances, other than the existing mortgages on 4th Street and 5th Street, pursuant to Bankruptcy Code Sections 363(b), (f) and (m) (the "Sales").

**A. Sale of Tenancy by the Entirety Interests**

23. Under New York law, real property owned as husband and wife creates a tenancy by the entirety, with each spouse holding an undivided one-half present possessory interest in the property, coupled with a right of survivorship in the entire fee which cannot be defeated by the co-tenant spouse or by that spouse's judgment creditors. N.Y. Est. Powers & Trusts Law § 6-2.2 (McKinney); 12 N.Y. Prac., New York Law of Domestic Relations § 26:21.

[5] "Purchasers" means collectively, the 4th Street Purchaser, 5th Street Purchaser, and Corlies Purchaser.

[6] "Purchase Prices" mean collectively, the 4th Street Purchase Price, 5th Street Purchase Price, and 223 Corlies Purchase Price.

[7] "Contracts" means collectively, the 4th Street Contract, 5th Street Contract, and 223 Corlies Contract.

24. While either spouse may convey his or her own interest in the property, without the other spouse's consent the conveyance cannot bind the entire fee or impair the nonconsenting spouse's survivorship interest. *Carpenter v. Crespo*, 161 A.D.3d 934, 78 N.Y.S.3d 165 (2018). There is an absolute bar to involuntary partition of such property, and while a judgment creditor of only one spouse can compel the sale of just that spouse's interest in the property, any purchaser at any such sale acquires only a tenancy in common subject to the non-debtor spouse's right of survivorship. *Halpern v. White*, 247 A.D.3d 897, 898, 254 N.Y.S.3d 172, 174 (2026).

25. Similarly, under New Jersey law, when property is owned as tenants by the entirety, "[n]either spouse may sever, alienate, or otherwise affect their interest in the tenancy by entirety during the marriage or upon separation without the written consent of both spouses." N.J.S.A. 46:3-17.4. The enactment of this statute precluded partition and sale when the debts were owed by only one spouse because permitting such relief could detrimentally affect the other spouse's interest in the property. *Jimenez v. Jimenez*, 454 N.J. Super. 432, 437, 185 A.3d 954 (App. Div. 2018).

26. Under New Jersey law, the tenants by the entirety interest vests in each spouse two separate interests in the property – a present possessory interest and a survivorship interest. *In re Brown*, No. 25-21406 (CMG), 2026 WL 2268847, at *7 (Bankr. D.N.J. Aug. 6, 2026). In a recent decision in *In re Brown*, the court held that since a tenant by the entirety can alienate their right of survivorship, and a judgment creditor of either spouse may levy and execute upon such right, the present possessory interest is exempt and all that remains for the Debtor's estate to liquidate is a contingent right of survivorship. *Id*.

27. The proposed Sales of the Properties are all proceeding with the consent of Alisa: Alisa is the 4th Street Purchaser, and Alisa has signed the 5th Street Contract and 223 Corlies Contract indicating her consent to the Sale of the Properties to the Purchasers only. Alisa's consent

allows the Debtor and his estate to realize 50% of the equity in the Properties from the Sales to the Purchasers, instead of a significantly diminished amount from the sale of his survivorship interests only.

**B. Sound Business Justification Exists for the Sales**

28. Section 363(b) of the Bankruptcy Code provides, in pertinent part, that the Debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate". 11 U.S.C. §363(b)(1).

29. Section 363 of the Bankruptcy Code does not set forth an express standard for determining whether a sale of property under §363(b) should be approved; however, courts that have interpreted this section consistently apply an "articulated business judgment" standard. *See, In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Walter*, 83 B.R. 14, 17 (B.A.P. 9th Cir. 1988); *In re Channel One Communications, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990); *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

30. In determining whether a sufficient business reason to authorize a sale has been articulated, courts consider the following non-exclusive factors: (1) the proportionate value of the asset to the estate as a whole; (2) the amount of time elapsed since the filing; (3) the likelihood of proposing and confirming a plan in the near future; (4) the effect of the proposed sale on any reorganization; (5) the sale price to be obtained with reference to any appraisals of the property; (6) alternative uses of the property; and (7) whether the asset is increasing or decreasing in value. *In re Island Gastroenterology Consultants, P.C.,* 2026 WL 2353301, at *6 (Bankr. E.D.N.Y. Aug. 13, 2026).

31. The Debtor has determined that the best interests of his estate and his creditors will be served through the Sales of the Properties in accordance with the Contracts.

32. The Properties are the Debtor's principal assets, but outside the Sales they would yield nothing to the Debtor's estate. After considering the mortgages that encumber the Properties as well as Alisa's 50% interest in the Properties, the Properties, if sold, will not yield significant equity notwithstanding the fair market value of the Properties. While the mortgages on the Properties do not exceed the value of the respective Properties, the Judgments encumber all of the remaining equity by well over $12 million. In a liquidation scenario, there would be no recovery from the Properties to the Debtor's estate. Indeed, any sale of the Debtor's interests in the Properties would only result in a small distribution to the holders of Judgments, and for that reason, it is unlikely that a chapter 7 trustee would pursue a sale of the Properties.

33. The Purchase Price for the Properties is based on recent appraisals, with the Purchase Prices negotiated to reflect at least 50% of the equity in the Properties, including the Plan Fund contributions.

34. The Debtor intends to file a plan of reorganization, which will be funded from the Purchase Prices. The Sales negotiated by the Debtor would result in a payment of approximately $960,000.00 to the holders of Judgments in order of priority, plus $100,000 to the Plan Fund, as discussed herein below in ¶40. Approving the Sales would allow the Debtor to confirm a plan of reorganization. In addition to the foregoing, if a plan is confirmed and a section 1146(a) exemption applies, the estate will also save over $123,000 in transfer taxes which will be available for additional distributions to creditors in the order of priority.

35. A sound business reason exists to proceed now, rather than await confirmation of a plan. First, the mortgages on the Properties are in foreclosure, and the Debtor cannot fund them, so

interest and fees continue to accrue and erode the remaining equity in the Properties. Second, Alisa's consent, which avoids a contested action under section 363(h), is given only for the Purchasers and only under the Contracts and lapses if the Sales are not approved and closed. Third, the Plan Fund cannot exist until the Sales close, so the Sales are the predicate for the plan the Debtor intends to file. The Sales also are not a sub rosa plan. They do not set the terms of a plan or avoid the confirmation requirements. Each Sale converts the estate's interest in a Property to cash. Any lien from which a Property is sold free and clear attaches to the net proceeds with the same validity and priority it had in the Property, and the net proceeds will be held in escrow pending further order of the Court. The Sales do not release any claim, classify any creditor, or fix the treatment of any claim. Distribution of the net proceeds, including the Plan Fund, will be determined by a plan that is subject to creditor voting and the requirements of section 1129. *See Island Gastroenterology*, 2026 WL 2353301.

36. As such, the Debtor submits that the proposed Sales represent a prudent and proper exercise of his business judgment and are supported by an articulated business reason.

### C. The Sale Price is Fair and Reasonable and The <u>Sale Terms Were Negotiated In Good Faith</u>

37. The Debtor submits that the Purchase Prices represent the highest and best price for the Properties, minimize the risk and expense of litigation of a forced sale of the Properties under Section 363(h), and will enable the Debtor to proceed with a plan of reorganization providing for payment to his creditors.

38. The Purchase Prices were negotiated to reflect a minimum of 50% of the equity in the Properties based upon appraisals of the respective Properties, including the Plan Fund contributions.

39. The Debtor respectfully submits that other than the Purchasers who are willing to

buy only a 50% interest in the Properties, no other third party would be interested in submitting bids for only a 50% interest in the Properties. Approving the Sales to the Purchasers maximizes the recovery to the Debtor's creditors since Alisa's consent to the Sales avoids the risk and cost of a forced sale of the Properties under Section 363(h). The Properties are owned by the Debtor and Alisa as tenants by the entirety. Alisa has consented to the Sales of the Properties to the Purchasers only pursuant to the Contracts. Alisa's consent allows the Debtor's interests in the Properties to be sold, without the litigation costs of a contested process to force a sale of the Properties. Further, since the Purchase Prices are based on appraisals of the Properties, it is unlikely that an auction of the Properties will yield prices higher than the Purchase Prices and certainly is unlikely to yield more to the Debtor's estate after litigation costs.

40. As summarized below, the total equity received from a forced sale of the Properties after consideration of the mortgages and closing costs, and before deducting litigation costs, is less than $900,000, all of which would go to the Judgments. The Sales pursuant to the Contracts will realize $100,000 to the Plan Fund: $50,000 contribution from the Debtor from his homestead exemption in 5th Street, and $50,000 Alisa Contribution. Thus, the Purchase Prices yield a recovery to the estate of over $1 million, plus approximately $123,747.50 from transfer tax exemption if the Debtor confirms a plan of reorganization, without any litigation costs incurred from a contested matter associated with a forced sale. If the Properties were sold at an auction, the auctions would have to yield over an additional $12 million to pay the Judgments before there would be any recovery to the Debtor's other creditors.

(Chart to follow on next page.)

| | **Public Sale[8]** | **Private Sales** |
|---|---|---|
| **5th Street** | | |
| Sales Price | $3,000,000.00 | $304,825.00 |
| Less Mortgage | ($2,482,249.49) | |
| Broker Fee | ($180,000.00) | |
| Transfer Tax | ($90,000.00) | ($9,144.75) |
| Closing Costs | ($10,000.00) | ($10,000.00) |
| Total Equity | $237,750.51 | |
| Debtor's Equity | $118,875.26 | $285,680.25 |
| Less Homestead | ($204,825.00) | ($204,825.00) |
| Payment to Judgments | $0.00 | $80,855.25 |
| Homestead Carveout for Plan Fund | $0.00 | $50,000.00 |
| | | |
| **4th Street** | | |
| Sales Price | $1,385,000.00 | $225,175.00 |
| Less Mortgage | ($854,082.43) | |
| Broker Fee | ($83,100.00) | |
| Transfer Tax | ($41,550.00) | ($6,755.25) |
| Closing Costs | ($10,000.00) | ($10,000.00) |
| Total Equity | $396,267.57 | |
| Debtor's Equity | $198,133.79 | $208,419.75 |
| Payment to Judgments | $198,133.79 | $208,419.75 |
| | | |
| **223 Corlies** | | |
| Sales Price | $4,000,000.00 | $2,975,000.00 |
| Less Mortgage | ($2,185,588.38) | ($2,185,588.38) |
| Broker Fee | ($240,000.00) | |
| Transfer Tax | ($185,875.00) | ($107,847.50) |
| Closing Costs | ($10,000.00) | ($10,000.00) |
| Total Equity | $1,378,536.62 | |
| Debtor's Equity | $689,268.31 | $671,564.12 |
| Payment to Judgments | $689,268.31 | $671,564.12 |
| | | |
| **Total Payment to Judgment** | **$887,402.10** | **$960,839.12** |
| **Homestead Carveout for Plan Fund** | **$0** | **$50,000.00** |
| **Alisa Contribution** | **$0** | **$50,000.00** |
| **Transfer Tax expense avoided** | **$0** | **$123,747.50** |

41. As demonstrated by the foregoing analysis, a forced sale of the Properties results in significantly less money available to creditors, without even considering the legal fees that would

[8] Amounts are based on appraised value of the Properties, and do not reflect litigation costs of a forced sale under §363(h).

be borne in connection with litigation. Furthermore, if the case was converted and a chapter 7 trustee was appointed, the sale proceeds would be further depleted by trustee commissions of roughly $275,000 under section 326 of the Bankruptcy Code.

42. As such, the Debtor believes that the Purchase Prices represents substantial value to his estate in exchange for fair and reasonable consideration. *See, Mellon Bank N.A. v. Metro Communications, Inc.*, 945 F.2d 635 (3d Cir. 1991); *See, also, Mellon Bank N.A. v. Official Comm. Of Unsecured Creditors*, 92 F.3d 139 (3d Cir. 1996). Moreover, the Debtor's arm's length negotiations with the Purchasers, through counsel, ensured that the ultimate purchase price secured for the assets is fair and reasonable under the circumstances.

43. Once a good business justification is articulated by the sale proponent, "there 'is a presumption that in making a business decision the [decision maker] acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re Giftcraft Ltd.*, 672 B.R. 173, 181 (Bankr. S.D.N.Y. 2025) (citing *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992)); *In re Island Gastroenterology Consultants, P.C.,* 2026 WL 2353301, at *5 (Bankr. E.D.N.Y. Aug. 13, 2026).

## D. Sale Free and Clear of Encumbrances

44. Subsection (f) of Section 363 of the Bankruptcy Code goes on to authorize such a sale, "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied:

> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable

proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

45. Section 363(f) of the Bankruptcy Code is drafted in the disjunctive: approval of a proposed sale of assets free and clear of interests requires only that one of the five requirements be satisfied with respect to each such interest. *Citicorp Homeowners Servs. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988)*; In re Roman Cath. Diocese of Rockville Ctr.,* 665 B.R. 71, 84 (Bankr. S.D.N.Y. 2024).

46. The sale of the Debtor's tenancy by the entirety interest in 4th Street and 5th Street is subject to the existing mortgages on those respective properties. The Debtor expects that the 223 Corlies Purchase Price is sufficient to pay the mortgage on that property. Accordingly, the sale of 223 Corlies free and clear of the mortgages is authorized under sections 363(f)(3).

47. Under 363(f)(5), the Properties may be sold free and clear of the Judgments. The Courts in this district have held that "[b]ecause the nonconsensual judicial lienors could be compelled to take money in satisfaction of their liens and there are proceedings which could result in payment in full from a source separate and apart from the sale of the property, the subject liens could, as a matter of law, be removed from the property, thus fulfilling the requirements of § 363(f)(5)." *In re Hamilton Rd. Realty LLC*, No. 8-19-72596-REG, 2021 WL 1620046, at *1 (Bankr. E.D.N.Y. Apr. 26, 2021). In *Hamilton Rd. Realty,* Judge Grossman suggested that "cramdown" treatment in a bankruptcy proceeding would constitute a proceeding which would compel judicial lienholders to accept payment in satisfaction of their interest. *Id.* at *6. ("However, if there is a proceeding by which the Judicial Lienors could be compelled to accept money in exchange for their liens, even if it is not the entire amount, this would satisfy the requirements set forth in § 363(f)(5)… cramdown is not a mechanism that could be used in a Chapter 7 case.") As discussed herein, the Debtor will

be filing a chapter 11 plan of reorganization which uses the proceeds from the sale of the Properties to fund a distribution to his creditors. The Debtor's plan may, under section 1123(b)(5), modify the rights of secured claims, thus satisfying 363(f)(5).

48. In addition, under 363(f)(2), "a lienholder who receives notice of a sale but does not object within the prescribed time period is deemed to consent to the proposed sale, and assets thereafter may be sold free and clear of liens." *In re Borders Group, Inc.*, 453 B.R. 477, 484 (Bankr. S.D.N.Y. 2011). *In re Northside Tower Realty, LLC*, No. 1-10-42080-CEC, 2011 WL 2750924, at *4 (Bankr. E.D.N.Y. Jan. 21, 2011)("Those holders of Interests who did not object to the Motion are deemed, subject to the terms of this Order, to have consented pursuant to Bankruptcy Code section 363(f)(2).").

49. Based upon the foregoing, the Debtor has satisfied the requirements under 363(f) for the sale of the Properties to be free and clear of any interests.

## EXTRAORDINARY PROVISIONS

50. The Local Rules of this Court require a movant selling property to identify any "extraordinary provisions" in a sale motion, which are identified below.

### A. Sales to Insiders

51. The Purchasers of the Properties are insiders of the Debtor. The 4th Street Purchaser is the Debtor's wife, Alisa. The 5th Street Purchaser is the Debtor's son, Meir Sutton. The 223 Corlies Purchaser is the Debtor's daughter, Norma Sutton, and her husband, Ovadia Harary.

52. While there is a heightened responsibility to demonstrate that the sale is proposed in good faith and for fair value when the purchaser is an insider, "[i]t is not 'per se bad faith' for an insider to purchase assets of a debtor, and 'a sale to him without more would not suffice to show a lack of good faith.'" *Sabatini Frozen Foods, LLC v. Jones*, 2013 WL 1345104, at *4 (E.D.N.Y.

Mar. 29, 2013)(citing *In re Bakalis,* 220 B.R. 525, 537 (Bankr. E.D.N.Y.1998)); *In re Bidermann Indus. U.S.A. Inc*., 203 B.R. 547 (Bankr. S.D.N.Y. 1997). Instead, "[t]he affirmative focus is the probity of the purchaser's conduct during the course of the sales proceeding." *Id.*

53. The Debtor took several steps to ensure the Sales are fair. Each Purchaser was represented by counsel separate from the Debtor's counsel, and each price is tied to an independent appraisal.

54. The Purchase Prices also exceed what a third party would pay. The appraisals value each Property in "fee simple," but the Debtor's interest is as a tenant by the entirety. Without Alisa's consent, a third-party buyer would take that interest subject to her right of survivorship, could not compel partition, and would lose the interest entirely if the Debtor predeceased her. *See V.R.W., Inc. v. Klein*, 68 N.Y.2d 560, 564-65 & n. (1986); *Matter of Halpern v. White*, 247 A.D.3d 897 (2d Dep't 2026); *Jimenez v. Jimenez*, 454 N.J. Super. 432 (App. Div. 2018). A buyer of the Debtor's interest in 4th Street or 5th Street would also take subject to mortgage payments on the entire property. The Purchasers of 4th Street and 5th Street are taking on that same mortgage risk. An interest with these burdens would sell, if at all, at a steep discount. The Purchasers instead pay prices at or above Debtor's appraised equity value, including the Plan Fund contributions, and Alisa's consent, which she has given only for these Purchasers, lets them take free of her survivorship right. Nor is a third-party sale of the entire Properties a realistic alternative. Alisa will not consent to one, and her interest could be sold only through a contested adversary proceeding under section 363(h), which would require a showing, among other things, that the benefit to the estate outweighs the detriment to Alisa, whose home is 5th Street. Even then, section 363(i) would let Alisa buy at the sale price, which would discourage outside bids.

55. Insofar as the Contracts are the product of good faith, arm's length negotiations

between the Debtor and Purchasers' counsel, the Debtor requests that this Court find that the negotiations were in good faith and that the Purchasers are "good faith purchasers" under §363(m) of the Bankruptcy Code.

**B. Basis for a Private Sale**

56. The interests of the Debtor's estate and his creditors are best served through the private sale of the Properties.

57. In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the ordinary course of business may be by private sale or by public auction. Fed. R. Bankr. P. 6004(f)(1). *In re Weiss Multi-Strategy Advisers LLC*, 665 B.R. 578, 590 (Bankr. S.D.N.Y. 2024). There is no requirement in the Bankruptcy Code or Bankruptcy Rules that an asset sale be subject to a formal auction. *See In re The Great Atl. & Pac. Tea Co., Inc.*, 544 B.R. 43, 49 (Bankr. S.D.N.Y. 2016) ("More importantly, there is no rule that a debtor's decision to reject a lease be subject to a formal auction: even asset sales are not conditioned on such a requirement, which does not appear in the Bankruptcy Code or Bankruptcy Rules."). *Weiss Multi-Strategy*, 665 B.R. at 591.

58. The Sales, the Debtor believes, would provide the best opportunity to monetize the Debtor's interests in the Properties. The Debtor did not list the interests with a broker or solicit competing bids, and that is adequate under the circumstances. Absent Alisa's consent, the estate can offer a third party only the Debtor's interest as a tenant by the entirety, subject to her survivorship right, with no right to compel partition, and, for 4th Street and 5th Street, subject to accelerated mortgages in foreclosure. See ¶24-26, supra. Alisa has consented only to these Purchasers. Any forced sale of her interest under section 363(h) would be contested, and section

363(i) would let her match any bid. There is no realistic market for these interests, and the Purchase Prices already exceed what a third party would pay by matching Debtor's portion of the appraised value of the Properties, including the Plan Fund contributions.

59. Proceeding with an auction process, versus a private sale, would incur additional costs to the Debtor's estate, without any assurances that there would be any benefit or increased purchase price. First, the Purchase Prices were negotiated based upon appraisals of the Properties and represent the fair market value of the Properties. Second, an auction process would add an additional cost for marketing and broker fees, which do not exist in the private sale contemplated by the Contracts. Third, because the Properties are owned as tenants by the entirety, there would be another layer of cost and expense for litigating the forced sale of the Properties under section 363(h). Fourth, the private sale under the Contracts provides for $100,000 to the Debtor's Plan Fund, whereas an auction process would have to yield an additional $12 million to satisfy the Judgments before there would be any funds available for the Debtor's other creditors.

60. As such, there is no reason to believe that the estate or its creditors will benefit from the conduct of an auction and in fact, could be harmed by either the loss of the Purchasers or additional cost that a delay would cause.

61. For all of these reasons, the Debtor submits that the private sale under the Contracts is appropriate, represents the highest and best price for the Debtor's interests in the Properties, and the best path forward to maximize the value of the Properties and is in the best interest of the Debtor, his creditors and his estate at large.

**C. <u>Tax Exemption</u>**

62. The Debtor intends to file a plan of reorganization to be funded from the Sales for the Debtor's interests in the Properties. The plan to be filed by the Debtor will seek an exemption

from transfer taxes under section 1146(a) of the Bankruptcy Code, including recording tax, stamp tax, use tax, and bulk sales tax, which may be assessed against the Properties in the state of New York, City of New York, and State of New Jersey.

## CONCLUSION

63. Based upon the foregoing, the Debtor respectfully requests that the Court approve the Contracts and authorize the private Sales of the Debtor's interests in the Properties.

## NOTICE

64. Notice of this Motion has been provided to (i) Purchasers' counsel; (ii) the Office of the United States Trustee; (iii) parties requesting notice under Bankruptcy Rule 2002; (iv) Debtor's secured creditors; (v) all of the Debtor's creditors; (vi) entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in the Properties, including the holders of the Judgments; and (vii) the Debtor's taxing authorities. The Debtor submits that said notice is adequate and proper under Bankruptcy Rules 2002 and 6004, and the EDNY Sale Guidelines.

**WHEREFORE**, for the foregoing reasons, the Debtor respectfully requests that the Court enter an order pursuant to §§363(b), (f) and (m) of the Bankruptcy Code approving the Contracts and authorizing the Sales provided for therein, together with such other relief as the Court deems just, proper, and equitable under the circumstances.

Dated: Scarsdale, New York
October 23, 2026

KIRBY AISNER & CURLEY LLP
*Attorneys for Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
Tel: (914) 401-9500

By: */s/ Julie Cvek Curley*
Julie Cvek Curley, Esq.